ORIGINAL

FAXED

1  FRANK R. UBHAUS, CA STATE BAR NO. 46085
   BERLINER COHEN
2  TEN ALMADEN BOULEVARD
   ELEVENTH FLOOR
3  SAN JOSE, CALIFORNIA 95113-2233
   TELEPHONE: (408) 286-5800
4  FACSIMILE: (408) 998-5388
   frank.ubhaus@berliner.com
5
   ATTORNEYS FOR CREDITOR TOM MASTERS
6

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11 | In Re:                                    | CASE NO. 15-50656-SLJ

12 | Daniel Joseph Shaw and Amber June McClain | Chapter 7
   | Shaw.
13 |                                           | Adversary Proceeding No.
   |        Debtor.
14 |                                           | COMPLAINT TO AVOID DISCHARGE

15 | THOMAS P. MASTERS, individually, and as
   | Trustee of the Thomas P. Masters 1993 Trust,
16 |
   | Plaintiff,
17 |
   | v.
18 |
   | DANIEL J. SHAW
19 |
   | Defendant
20

21

22

23

24

25

26

27

28

Case: 15-50656    Doc# 30    Filed: 06/03/15    Entered: 06/03/15 16:32:12    Page 1 of 22

Plaintiff, Thomas P. Masters, individually and as Trustee of the Thomas P. Masters 1983 Trust ("Plaintiff") files the following Complaint to determine dischargeability of the debt owed to Plaintiff by Daniel J. Shaw ("Defendant").

1. Defendant is the debtor in bankruptcy case number 15-50656 –SLJ filed in the above referenced court on February 27, 2015[Dkt. #1].

2. Plaintiff is a creditor of Defendant by virtue of, among other things, a judgment in his favor against Defendant for the sum of $262,500 pursuant to a stipulated settlement in the Santa Clara County Superior Court Case No.1-08-CV-128350 (a true and correct copy of the Stipulated Judgment and Order thereon is attached hereto as **Exhibit A** and incorporated herein by this reference).

3. This is a core proceeding under 28 U.S.C. Sections 157(b) (2) (1) and 28 U.S.C. Section 157(b) (2) (J). The Court has jurisdiction under 28 U.S.C. Section 1334. Venue of this action is proper under 28 U.S.C. Section 1409.

### BACKGROUND FACTS

4. Defendant was the Designated Officer for RMRF Enterprises, Inc. dba Cupertino Capital, a licensed real estate broker in the State of California.

5. Defendant was one of three shareholder owners of an entity known as Cabrillo Commons, Inc., a California corporation formed by Defendant for the purpose of engaging in the construction of a 43 unit new town-home project in Aptos, California known as "Cabrillo Commons."

6. In the summer of 2007, Plaintiff was presented by Defendant with a summary offering memorandum soliciting his participation as a lender in a $1,200,000 loan to be made to Cabrillo Commons. The offering memorandum was referred to by Defendant as a "Trust Deed Investment Summary" and generally contained the relevant facts and representations with respect to the offering.

7. The Trust Deed Investment Summary represented that "The funds being loaned in this note will be kept by the borrower in a CD and used as collateral to put up a Letter of Credit to

4824-7275-2162v2
FRU16950001

secure performance to the County of Santa Cruz. Upon partial or full release of the Letter of Credit, the Bank will release the CD and this loan will be paid back."

8. In reliance on the Trust Deed Investment Summary and other assurances made by Defendant and on the long-standing relationship and the trust and confidence which Plaintiff reposed in Defendant, on August 2, 2007, Plaintiff delivered Eight Hundred Thousand Dollars ($800,000) to Defendant to fund a substantial portion of the total loan amount (the "Cabrillo Commons Investment").

9. Defendant was aware that it was Plaintiff's policy to limit the size of his participation in Defendant's solicitations to substantially less than the amount of the Cabrillo Commons investment.

10. Defendant assured Plaintiff that the he would solicit additional lenders to replace most of the funds invested by Plaintiff in order to leave a loan balance of only Three Hundred Thousand Dollars ($300,000). Defendant failed to obtain such substitute financing; accordingly, Plaintiff's investment remained at $800,000.

11. Subsequent to making the Cabrillo Commons investment Plaintiff received from Defendant various documents apparently intended to confirm Plaintiff's investment; however, the documents did not accurately reflect the terms of the investment nor were they consistent with the representations made in the Trust Deed Investment Summary. Although uncomfortable with the documentation, Plaintiff nonetheless relied on his relationship with Defendant and believed that Defendant would respect the terms and promises contained in the Trust Deed Investment Summary and protect the disposition of the bank account funded by the Cabrillo Commons investment.

12. In approximately December, 2007, Plaintiff became concerned regarding the status of a number of outstanding investments he had with Defendant. Accordingly, Plaintiff prepared a detailed list of outstanding loans in which he had invested through Defendant and discussed those loans in a meeting with Defendant on December 18, 2007. Page 10 of the list prepared by Plaintiff refers to the Cabrillo Commons investment and states in pertinent part:

4824-7275-2152v2
FRU16950001

COMPLAINT TO AVOID DISCHARGE

1       "The [$800,000] sum advanced was with the understanding it would be paid down to

2 $300,000. No pay down has occurred as of 12/17/07. It would seem to me that there ought to be a

3 covenant that ANY release of the CD would go directly to the lenders, as this is the basis on which it

4 was sold"

5     13. Plaintiff ultimately demanded that Defendant memorialize the terms on which the Cabrillo

6        Commons investment as part of a settlement of issues involving a number of Plaintiff's

7        investments with Defendant. That settlement was memorialized in a written Settlement

8        Agreement; Section 3 of that Agreement provided that, with respect to the Cabrillo

9        Commons investment:

10           "Shaw acknowledges that Masters has no intention of extending or
renewing the term of Loan 1487 [the Cabrillo Common loan] (or any
11           other loans), and that the loan will be due and payable in accordance
with its terms on February 1, 2009. Shaw agrees that the payments
12           due on Loan 1487 shall be paid in a manner consistent with the
comments on the summary offering sheet for such loan that was
13           initially provided to Masters, a copy of which is attached hereto as
Exhibit D (e.g. in pertinent part that "upon the partial or full release
14           of the Letter of Credit, the Bank will release the CD – and [Loan
1487] will be paid back"), effective upon the execution of this
15           Agreement." (A true and correct copy of the Settlement Agreement is
attached hereto marked **Exhibit B** and incorporated herein by this
16           reference).

17     14. Following the execution of the Settlement Agreement, Plaintiff learned that, notwithstanding

18        the terms of the Trust Deed Investment Summary, the reaffirmation of those terms in the

19        Settlement Agreement, and his reliance on his fiduciary relationship with Defendant, at the

20        time of the negotiation and documentation of the Settlement Agreement, the Defendant had

21        already received permission from the County of Santa Cruz to reduce the Certificate of

22        Deposit and had already diverted significant sums from Plaintiff's investment in the

23        Certificate of Deposit for his own use and benefit or the use of projects with which he was

24        affiliated, including Cabrillo Commons, without repaying Plaintiff's investment as

25        represented and promised both in the Trust Deed Investment Summary and in the Settlement

26        Agreement.

27     15. Upon the consent of the County of Santa Cruz, in excess of $500,000 was released from the

28        CD but was diverted by Defendant without notice to or consent from Plaintiff.

4824-7275-2162v2
FRU\16950001

Case: 15-50656     Doc# 30     Filed: 06/03/15     Entered: 06/03/15 16:32:12     Page 4 of 22

16. In March 2010 Plaintiff filed a First Amended Complaint against Defendant and others for Fraud and Breach of Fiduciary Duty among other causes of action in the Santa Clara County Superior Court. The matter was settled as to the other defendants and was subsequently set for trial in October, 2010 as to the Defendant and set for a settlement conference the preceding week. At the settlement conference a stipulated settlement was reached on terms set forth in the Stipulated Judgment attached hereto as Exhibit A. Pursuant to the terms of the settlement judgment was entered against Plaintiff in the amount of $262,500. No portion of that sum has been paid by Defendant. Pursuant to the terms of the settlement agreement Defendant specifically agreed that the debt to Plaintiff would not be included in any subsequent bankruptcy filing and that the debt would not be dischargeable in bankruptcy.

## FIRST CAUSE OF ACTION

## [FRAUD]

17. Plaintiff incorporates by reference each of the allegations set forth in Paragraphs 1 – 16 above as though fully set forth herein.

18. Defendant personally, as a principal of Cupertino Capital and as a principal of Cabrillo Commons as part of a scheme and artifice to defraud, misrepresented to Plaintiff in the negotiations leading up to the Settlement Agreement and in the Settlement Agreement itself, the following material fact; that Shaw would repay Plaintiff with any of the funds released from the certificate of deposit following a release of such funds by the County of Santa Cruz. This representation was untrue as Shaw had no intention of performing pursuant to that promise.

19. Plaintiff relied on Defendant's misrepresentation because Defendant was Plaintiff's confidant and investment advisor in whom Plaintiff reposed trust and confidence.

20. The misrepresentations were material in that had Plaintiff known that Defendant had no intention of honoring the promise (and in fact had removed the funds from the CD at the very time that he was negotiating the Settlement Agreement) Plaintiff would not have entered into the Settlement Agreement (an agreement which covered millions of dollars of other investments Plaintiff then had with Defendant) and would have sought immediate

4824-7275-2162v2
FRU/16950001

1     repayment of the Cabrillo Commons investment and the other investments covered by the

2     Settlement Agreement.

3 21. As a proximate result of Defendant's misrepresentation and of his conversion of Plaintiff's

4     investment, Plaintiff suffered financial damage.

5 22. The conduct of Defendant was intentional, willful and wanton and designed to defraud

6     Plaintiff amounting to oppression, fraud and malice warranting the award of punitive and

7     exemplary damage.

8 <u>**CLAIM FOR RELIEF**</u>

9 23. As a result of Defendant's actions, Plaintiff has been damaged in the amount of $262,500 as

10     of October 20, 2010, the amount of the stipulated judgment.

11 24. Based on the foregoing conduct, Defendant's debt to Plaintiff is a debt for willful and

12     malicious injury by the debtor to another under Bankruptcy Code section 523(a) (6) and is

13     consequently nondischargeable thereunder.

14     WHEREFORE, Plaintiff prays for judgment as follows:

15   1. A determination that Defendant's debt to Plaintiff, including interest accrued at the legal

16     rate, is nondischargeable;

17   2. For cost of suit incurred herein, and

18   3. For such other and further relief as the Court deems just and proper.

19 DATED: JUNE 3, 2015           BERLINER COHEN

20

21                BY: <u>/S/ FRANK R. UBHAUS</u>

                   FRANK R. UBHAUS

22                    ATTORNEYS FOR DEBTOR CREDITOR TOM

                   MASTERS

23

24

25

26

27

28

# EXHIBIT A

1  FRANK R. UBHAUS, CA STATE BAR NO. 46085
   THOMAS D. MORELL, CA STATE BAR NO. 198403
2  MARCO M. CAMPAGNA, CA STATE BAR NO.: 246633
   BERLINER COHEN
3  TEN ALMADEN BOULEVARD
   ELEVENTH FLOOR
4  SAN JOSE, CALIFORNIA 95113-2233
   TELEPHONE: (408) 286-5800
5  FACSIMILE: (408) 998-5388
   frank.ubhaus@berliner.com
6  thomas.morell@berliner.com
   marco.campagna@berliner.com
7
   ATTORNEYS FOR PLAINTIFF
8  THOMAS P. MASTERS, INDIVIDUALLY, AND AS TRUSTEE
   OF THE THOMAS P. MASTERS 1993 TRUST

9

10              SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

11                        UNLIMITED CIVIL JURISDICTION

12   THOMAS P. MASTERS, individually, and as        CASE NO. 1-08-CV-128350
     Trustee of the Thomas P. Masters 1993 Trust
13                                                  STIPULATED JUDGMENT
                    Plaintiff,
14
            v.
15
     DANIEL J. SHAW, RMRF ENTERPRISES,
16   INC., a California corporation dba
     CUPERTINO CAPITAL, CABRILLO
17   COMMONS, INC., a California corporation,
     MICHAEL T. PARSONS, ANTHONY B.
18   BOWMAN, and DOES 1 through 50,
     inclusive,
19
                    Defendants.
20

21          IT IS HEREBY STIPULATED by and between plaintiff, Thomas P. Masters,

22   individually, and as Trustee of the Thomas P. Masters Trust, through his attorney, and defendant,

23   Daniel J. Shaw, individually, that:

24          1.      On October 20, 2010 the above referenced case was settled pursuant to California

25   Civil Code Section 664.6 on the following terms as stipulated by plaintiff and defendant:

26                  a.      Defendant to pay plaintiff the sum of $250,000 on or before October 20,

27   2011;

28

\FRUA1157741.1
041213-16950003

Case: 15-50656    Doc# 30    Filed: 06/03/15    Entered: 06/03/15 16:32:12    Page 8 of 22

(ENDORSED)
FILED

MAY 15 2013

1       b.     If defendant made a $15,000 payment on or before October 20, 2011 the

2 due date for the $250,000 payment would be extended 12 months;

3       c.     If defendant failed to make the $15,000 payment on or before October 20,

4 2011 then the full $250,000 plus interest at the rate of 5% per annum to and including October

5 20, 2011 would be immediately due and payable;

6       d.     In the event that defendant filed for bankruptcy protection the obligation

7 to plaintiff would not be listed as an obligation in his bankruptcy schedules and the obligation

8 would not be dischargeable in bankruptcy;

9       e.     The settlement agreement would be judicially enforceable under the

10 provisions of California Code of Civil Procedure Section 664.6.

11     2.     Defendant failed to make the $15,000 payment referred to in the settlement

12 agreement and there is now due and owing to plaintiff the sum of $250,000 together with 5%

13 interest from October 20, 2010 through October 20, 2011 in the amount of $12,500.

14     Judgment may be entered pursuant to the terms of the foregoing stipulation.

15

16 DATED:   5/3/13                 _____

17                             ATTORNEY FOR PLAINTIFF

18 DATED:   4/29/2013          _____

19                             DEFENDANT

20

21

22

23

24

25

26

27

28

\FRU\1157741.1
041213-16950003

1  FRANK R. UBHAUS, CA STATE BAR NO. 46085
   THOMAS D. MORELL, CA STATE BAR NO. 198403
2  MARCO M. CAMPAGNA, CA STATE BAR NO.: 246633
   BERLINER COHEN
3  TEN ALMADEN BOULEVARD
   ELEVENTH FLOOR
4  SAN JOSE, CALIFORNIA 95113-2233
   TELEPHONE: (408) 286-5800
5  FACSIMILE: (408) 998-5388
   frank.ubhaus@berliner.com
6  thomas.morell@berliner.com
   marco.campagna@berliner.com
7
   ATTORNEYS FOR PLAINTIFF
8  THOMAS P. MASTERS, INDIVIDUALLY, AND AS TRUSTEE
   OF THE THOMAS P. MASTERS 1993 TRUST
9

(ENDORSED)
FILED

MAY 15 2013

David H. Yamasaki, Chief Executive Officer/Clerk
Superior Court of Santa Clara County
By_____
                    Deputy Clerk

10              SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

11                          UNLIMITED CIVIL JURISDICTION

12  THOMAS P. MASTERS, individually, and as      CASE NO. 1-08-CV-128350
    Trustee of the Thomas P. Masters 1993 Trust
13                                               ORDER
                Plaintiff,
14
         v.
15
    DANIEL J. SHAW, RMRF ENTERPRISES,
16  INC., a California corporation dba
    CUPERTINO CAPITAL, CABRILLO
17  COMMONS, INC., a California corporation,
    MICHAEL T. PARSONS, ANTHONY B.
18  BOWMAN, and DOES 1 through 50,
    inclusive,
19
                Defendants.
20

21       IT IS ORDERED that judgment be entered pursuant to the terms of the stipulated

22  settlement between the parties, as follows:

23       1.     $262,500 payable to plaintiff;

24       2.     The judgment entered pursuant to the parties stipulation shall accrue interest at the

25  rate of 10% per annum from the date of October 20, 2011;

26  ///

27  ///

28  ///

                                          -1-
                                        ORDER

3. Defendant's obligation to plaintiff pursuant to the terms of the stipulated settlement agreement shall not be listed in defendant's bankruptcy schedules in the event defendant files for bankruptcy protection.

These terms/conditions are in conformity

SO ORDERED: with parties Stipulated
Judgment, submitted herewith

DATED: 5-10-13

_____
JUDGE OF THE SANTA CLARA COUNTY SUPERIOR COURT

Carol Overton

-2-
ORDER

Case: 15-50656 Doc# 30 Filed: 06/03/15 Entered: 06/03/15 16:32:12 Page 11 of 22

# EXHIBIT B

## SETTLEMENT AND INDEMNIFICATION AGREEMENT

This Settlement and Indemnification Agreement (hereinafter "Agreement") is made among Thomas P. Masters, an individual, Thomas P. Masters, as trustee of the Thomas P. Masters 1993 Trust ("Masters Trust"), and Thomas P. Masters as the beneficiary of Sterling Trust Company Individual Retirement Account #031442 ("Masters IRA"), on the one hand, and RMRF Enterprises, Inc., a California corporation dba Cupertino Capital ("Cupertino Capital") Daniel J. Shaw, individually and as trustee of The Shaw 1993 Living Trust, dated 10/30/98 ("Shaw Trust"). Mr. Masters, Masters Trust, and Masters IRA are referred to from time to time herein collectively for convenience as "Masters." Cupertino Capital, Mr. Shaw, and the Shaw Trust are referred to from time to time herein collectively for convenience as "Shaw." Masters and Shaw are sometimes collectively referred to as the "Parties."

### RECITALS

A.      Thomas P. Masters is an individual residing at 28225 Robinson Canyon Road, in Carmel, California.

B.      Masters Trust is a revocable family trust, for which Thomas P. Masters is the trustee.

C.      Masters IRA is an individual retirement account maintained by Sterling Trust Company, trustee, for the benefit of Thomas P. Masters.

D.      Daniel J. Shaw is an individual with offices at 15700 Winchester Blvd., Los Gatos, California.

E.      The Shaw Trust is a revocable family trust, for which Daniel J. Shaw and Amber June McClain Shaw are the sole trustees.

G.      RMRF Enterprises, Inc., is a California corporation doing business as Cupertino Capital with offices at 15700 Winchester Blvd., Los Gatos, California

\\TMORELLI\57131.4
042408-16950001

-1-



H.     Attached to this Agreement as Exhibit A is a schedule of outstanding loans that have been arranged by Cupertino Capital, and funded by Masters, or one or more of them (the "Loan Portfolio"). For convenience, the individual loans referred to on Exhibit A shall be referred to by the Cupertino Capital Loan Number set forth on Exhibit A.

I.     Masters has taken the position that Shaw is obligated to indemnify Masters with respect to a variety of potential losses that Masters might suffer in connection with the Loan Portfolio.

J.     Shaw has denied Masters' claims.

K.     The purpose and intent of this Agreement is to clarify and set forth the agreement of Shaw and Masters with regard to the obligations of Shaw to Masters in connection with the Loan Portfolio.

L.     The Parties concurrently intend to ratify and confirm any express written guarantees previously delivered by Shaw to Masters in connection with some of the loans in the Loan Portfolio.

<center>COVENANTS</center>

NOW, THEREFORE, to avoid the substantial expense and inconvenience of litigation and in consideration of the promises and agreements hereinafter set forth, IT IS HEREBY AGREED by and between the undersigned as follows:

1.     Provision for Stipulated Judgment. Shaw agrees that Shaw shall pay Masters the full principal amount of Eight Hundred Fifty Thousand Dollars ($850,000) in respect of and owing on Loan 1098, plus any accrued interest thereon, on or before June 1, 2008. This obligation shall be memorialized and secured by a stipulated judgment against Shaw that is enforceable by its own terms in the Santa Clara County Superior Court, in the form attached hereto as Exhibit B. That judgment shall be in relation to the Complaint which will be in the form of the attached Exhibit C. Such complaint shall not be filed with the Court or disclosed to any third party in any manner on or before June 1, 2008.

Case: 15-50656   Doc# 30   Filed: 06/03/15   Entered: 06/03/15 16:32:12   Page 14 of 22

2.  **Loan Indemnification.**

(a)     **Indemnification of Masters**. Shaw shall indemnify, defend, protect, and hold harmless Masters (and any of Masters' constituent partners, beneficiaries, trustees, heirs, assigns, and agents, from all Indemnified Loan Losses (as defined below) on the Indemnified Loans (as defined below), including without limitation, reasonable attorneys' and consultants' fees and costs incurred in collecting such amounts from Shaw after demand therefor.

(b)     **Definition of Indemnified Loans**. As used herein, the term "Indemnified Loans" shall mean and refer to the following loans set forth on the attached Exhibit A: Loan 1055, Loan 1105, Loan 1202, Loan 1257, Loan 1357, Loan 1376, and Loan 1486.

(c)     **Definition of Indemnified Loan Losses**. As used herein, the term "Indemnified Loan Losses" shall mean and refer to any principal amounts due and owing to Masters under the Indemnified Loans, but shall not include unpaid interest due thereon. Shaw shall have no liability to Masters for such Indemnified Loan Losses, however, unless and until the claims for such Indemnified Loan Losses collectively aggregate to more than One Hundred Seventy Five Thousand Dollars ($175,000.00) in principal amounts invested by Masters, in which event the amount of any Loan Losses in excess of One Hundred Seventy Five Thousand Dollars ($175,000.00) in principal amounts invested by Masters shall be the obligation of Shaw.

(d)     **Excluded Loans**. As to the balance of the Loans set forth on Exhibit A, ("Excluded Loans"), Masters agrees that Shaw shall bear no liability therefor, except insofar as Shaw has previously expressly guaranteed such obligations, whereupon the guarantees shall be unaffected (e.g. Loan

Case: 15-50656   Doc# 30   Filed: 06/03/15   Entered: 06/03/15 16:32:12   Page 15 of 22

1217) and shall be fully enforceable in accordance with their terms, irrespective of any separate indemnification provided for herein. Shaw hereby ratifies the obligations set forth in such guarantees.

(e)     This Agreement is solely intended to resolve Masters' claims against Shaw with regard to the Loan Portfolio, and shall have no effect with respect to any other rights, or with respect to any borrower, obligor, guarantor, or other obligee. All terms, covenants and conditions of the documents memorializing the Indemnified Loans and the Excluded Loans shall remain in full force and effect.

3.     Loan 1487. Shaw acknowledges that Masters has no intention of extending or renewing the term of Loan 1487 (or any other loans), and that the loan will be due and payable in accordance with its terms on February 1, 2009. Shaw agrees that the payments due on Loan 1487 shall be paid in a manner consistent with the comments on the summary offering sheet for such loan that was initially provided to Masters, a copy of which is attached hereto as Exhibit D (e.g. in pertinent part that "upon the partial or full release of the Letter of Credit, the Bank will release the CD – and [Loan 1487] will be paid back"), effective upon the execution of this Agreement.

4.     Information on Loan Portfolio. Shaw agrees that Cupertino Capital shall provide Masters a monthly summary of the Loan Portfolio consistent with the form submitted to Masters on February 28, 2008.

5.     Confidentiality. The Parties agree that, except as provided in this Agreement, and provided that the party seeking the benefit of this provision is not in breach of this Agreement, they will not, without compulsion of legal process, disclose to others any Confidential Settlement Information (as defined below), save and except as is reasonably necessary to disclose them to governmental tax authorities, and appropriate professionals and advisors who are obligated, either in writing or professionally, to maintain such disclosures in confidence, such as the party's respective counsel and accountants, and provided that such disclosure is reasonably necessary to

Case: 15-50656    Doc# 30    Filed: 06/03/15    Entered: 06/03/15 16:32:12    Page 16 of 22

effect the purpose for which such professionals and advisors are employed or consulted. All such persons to whom such disclosure is made are to be told that the information is confidential. Notwithstanding the foregoing provisions of this Section, should any litigation be commenced by or against any party to this Agreement, whether it be an action for damages, equitable or declaratory relief, relating to any facts or circumstances concerning the Loan Portfolio, or relating to any provision of this Agreement, the parties may make such use of and undertake such disclosures of the Confidential Settlement Information, and the facts and circumstances concerning the Loan Portfolio, this Agreement, and the terms thereof generally, as in good faith may be required to adequately prosecute or defend such litigation. As used in this Section 4, the term "Confidential Settlement Information" means the specific terms of this Agreement itself, together with the circumstances of the settlement negotiations leading thereto and the description of the underlying disputes which lead to the settlement process.

5.    No Inducement. Each Party individually and collectively declares and represents that no promises, inducements, or other agreements not expressly contained herein have been made and that this Agreement contains the entire agreement between the Parties as to the resolution of the parties claims and obligations regarding the Indemnified Loans and the Excluded Loans, and that the terms of this Agreement are contractual and not recitals only.

6.    Binding Effect. This Agreement shall inure to the benefit of each Party and/or benefit their predecessors, successors, subsidiaries, affiliates, representatives, assigns, agents, officers, directors, employees, and personal representatives, past, present and future.

7.    Further Documents. To the extent any documents are required to be executed by any of the Parties to effectuate the terms of this Agreement, each Party hereto agrees to execute and deliver such other and further documents as may be required to carry out the terms of this Agreement.

8.    Representation. Each Party represents and acknowledges that each of them has been represented by counsel as identified on the signature page of this Agreement with respect to this Agreement and any and all matters covered by or related to this Agreement. Each Party has

been fully advised with respect to all rights which are affected by this Agreement, with the exception of any tax implications. The Parties to this Agreement acknowledge and affirm that they have not been advised on any matters related to the impact of either Federal or State taxes relative to this Agreement and that each Party was advised to consult with independent tax counsel.

9.    <u>No Modification.</u>  This Agreement contains the entire agreement between the Parties and may not be altered, amended, or modified in any respect, except by a writing duly executed by the relevant Parties. All further prior agreements and understandings, oral agreements and writings are expressly suspended hereby and are of no further force or effect.

10.    <u>Headings, Number and Gender.</u>  Headings are used herein for convenience only and shall have no force or effect in the interpretation or construction of this Agreement. As used in this agreement, the singular shall include the plural and masculine, the feminine and neuter genders.

11.    <u>Payment of Attorney's Fee and Court Costs.</u>  Each Party shall be responsible for the payment of its own court costs, attorneys' fees, and all other expenses in connection with the negotiation of this Agreement.   If a lawsuit is filed arising out of the enforcement of or a claimed breach of this Agreement, the prevailing party shall be entitled to their reasonable attorney's fees and costs.

12.    <u>Applicable Law.</u>   This Agreement shall be construed and interpreted in accordance with the laws of the State of California.

13.    <u>Venue.</u>  Venue over any action over this Agreement shall be in the County of Santa Clara, State of California.

14.    <u>Joint Drafters.</u>  Counsel for each of the Parties have been involved in the drafting and negotiation of this Settlement Agreement.   Thus, no rule of law that ambiguity in an Agreement will be construed against the drafter shall be applied in interpreting this Agreement.

The Parties below named have executed this Agreement as of the 30th day of April, 2008.

Case: 15-50656    Doc# 30    Filed: 06/03/15    Entered: 06/03/15 16:32:12    Page 18 of 22

**MASTERS:**

THOMAS P. MASTERS, individually, and as trustee of the Masters 1993 Trust, and as the beneficiary of Sterling Trust Company Individual Retirement Account #031442

_____

**SHAW:**

DANIEL J. SHAW, individually and as trustee of The Shaw 1993 Living Trust, dated 10/30/98

_____

RMRF Enterprises, Inc., a California corporation, dba CUPERTINO CAPITAL

By: _____
Its: _____

**READ AND APPROVED:**

**BERLINER COHEN**

By: _____
Frank R. Ubhaus, Esq.
Attorneys for Masters

**MICHAEL T. PARSONS, ESQ.**

By: _____
Michael T. Parsons, Esq.
Attorney for Shaw

Case: 15-50656   Doc# 30   Filed: 06/03/15   Entered: 06/03/15 16:32:12   Page 19 of 22

## Masters Cupertino Capital Portfolio

Date Last Updated - 04.25.2008

| Loan # | Total Loan | Investment 12/17/2007 | Current 4/25/2008 | Status | Borrower | Maturity | Comments / Status / Projection |
|---|---|---|---|---|---|---|---|
| **Masters Family Partnership (6271)** | | | | | | | |
| 1093 | n/a | 300,000 | 0 | n/a | Ganoza | n/a | Investment was bought out as of 2/11/08 |
| 1098 | n/a | 550,000 | 0 | n/a | Cascade Investments | n/a | Tom directed CC to transfer this balance to his trust acct (6131)-effective 2/1/08 |
| 1434 | n/a | 325,000 | 0 | n/a | Quail Meadows | n/a | Investment was bought out as of 2/1/08 |
| **Masters Family Trust (6131)** | | | | | | | |
| 967 | n/a | 75,000 | 0 | n/a | Holiday Drive, LLC | n/a | Investment was bought out as of 1/14/08 |
| 992 | 650,000 | 200,000 | 200,000 | | Zamani | 08/01/06 | Loan paid current by BK. Court order, 6/9/08 court hearing |
| 1055 | 425,000 | 65,000 | 65,000 | | Touche Enterprises | n/a | Properties for sale ($200k - $200k / $50k) |
| 1061 | n/a | 200,000 | 0 | n/a | Chavez | 03/01/09 | Investment bought out |
| 1098 | 850,000 | 300,000 | 850,000 | Performing | Cascade Investments | 12/31/06 | To be paid $110k per settlement agreement |
| 1105 | 1,835,000 | 175,000 | 175,000 | Accruing | Kell Gire (Owner) | 02/01/07 | Offer pending at $1.95m with 35% down and some seller financing; investor letter to be sent |
| 1116 | n/a | 250,000 | 0 | n/a | Deprice Properties | n/a | Investment was bought out as of 1/14/08 |
| 1125 | 1,850,000 | 250,000 | 250,000 | Accruing | David McHabb | 03/01/07 | Offer pending at $2.1m. Invoices trade with another home, investor letter to be sent |
| 1175 | 350,000 | 350,000 | 350,000 | Performing | Ronald Wiener | 01/01/08 | CC working on new investors |
| 1183 | n/a | 237,982 | 0 | n/a | Sunset Meadows | n/a | Investment bought out |
| 1184 | n/a | 150,000 | 0 | n/a | Catchione | n/a | Paid Off on 4/22/08. All amounts due paid in full |
| 1180 | 600,000 | 300,000 | 300,000 | Performing | David Pitzen | 09/01/08 | Property in contract to be sold |
| 1202 | 640,000 | 150,000 | 150,000 | | Richard Ceraolo | 03/01/08 | Reviewing Offer from Borrower. Investor Letter to be sent |
| 1210 | 1,640,000 | 150,000 | 150,000 | REO | DHP Gresham | 03/01/07 | COE by 4/30/08. Principal will be returned in full |
| 1217 | 925,000 | 150,000 | 150,000 | | ODH Partners | 03/01/09 | NOD filed in April 2008 |
| 1222 | 860,000 | 250,000 | 250,000 | | Fitzhenry | 04/01/08 | Motion for relief continued to 5/7/08; appraisals pending |
| 1223 | 900,000 | 250,000 | 250,000 | | Fitzhenry | 04/01/08 | Motion for relief continued to 5/7/08; appraisals pending |
| 1257 | 1,470,000 | 400,000 | 400,000 | | Richard Ceraolo | 08/01/07 | Foreclosure Sale has been delayed until May 9th. Lawsuite answer pending from Ceraolo counsel |
| 1208 | n/a | 100,000 | 0 | n/a | JUGS Corp. | n/a | Investment was bought out as of 2/12/2008 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1315 | n/a | 200,000 | 0 | n/a | Red Horizons | n/a | Investment was bought out as of 1/25/08 |
| 1395 | n/a | 100,000 | 0 | n/a | Longview Apartments | n/a | Investment was bought out as of 12/1/07 |
| 1424 | n/a | 150,000 | 0 | n/a | Cupertino Homes | n/a | Paid Off on 1/2/08 |
| 1425 | 1,000,000 | 470,000 | 169,849 | Matured | Longview Development | 11/01/07 | 300k paydown 2/8/08; payoff pending |
| 1434 | n/a | 175,000 | 0 | n/a | Quail Meadows | n/a | Investment was bought out as of 2/1/08 |
| 1435 | 630,000 | 200,000 | 0 | n/a | AR Village Properties | n/a | Final buyout completed in April |
| 1453 | 1,100,000 | 350,000 | 350,000 | Performing | Larry Russel | 12/01/08 | |
| 1458 | 4,800,000 | 500,000 | 500,000 | Performing | Ram Retan (KPR Balmore) | 05/01/09 | TPM requests buydown to 300k |
| 1487 | 1,200,000 | 500,000 | 600,000 | Performing | Cabrillo Commons | 07/01/09 | |
| 1495 | 4,000,000 | 700,000 | 328,000 | Performing | Kimberly Oregon Realty Inc. | 09/01/10 | |
| | | | | | | | |
| Tom Masters IRA (6015) | | | | | | | |
| | | | | | | | |
| 299 | 0 | 600,000 | 0 | n/a | Chardonnay | n/a | Investment bought out |
| 1113 | 875,500 | 65,000 | 65,000 | Performing | David Chan (Madera Investments) | 07/01/07 | Junior lienholder brought current and has started foreclosure process |
| 1156 | 1,000,000 | 105,000 | 0 | n/a | La Plaza Mini Mart | n/a | Investment bought out |
| 1251A | 1,000,000 | 245,000 | 245,000 | Performing | San Marcos Villas | 09/01/08 | No recent closings. No units in contract. Bonus not paid as all proceeds are going to first lender |
| 1261 | 70,000 | 70,000 | 70,000 | Performing | Gioi Tran & Julie Pham | 12/01/09 | |
| 1293 | 500,000 | 225,000 | 225,000 | Performing | PASR Investments | 10/01/08 | TPM requests buyout. |
| 1308 | 250,000 | 50,000 | 50,000 | Performing | John Kieran Hynes | 01/01/09 | |
| 1357 | 300,000 | 300,000 | 300,000 | LATE | Donald C. Pipkins | 05/01/09 | |
| 1376 | 2,000,000 | 300,000 | 300,000 | LATE | Red Hawk Community Partners | 07/01/09 | 1st loan has interest reserve for another 5 mos. or so |
| 1424 | n/a | 100,000 | 0 | n/a | Cupertino Homes | n/a | Paid Off on 1/2/08 |
| 1425 | 1,000,000 | 120,000 | 119,893 | Matured | Longview Development | 11/07/07 | Payoff Pending |
| 1451 | 400,000 | 70,000 | 70,000 | Performing | Giuseppe Ressa | 08/08/08 | |
| | | | | | | | |
| TOTALS | | 11,075,982 | 7,135,742 | | | | |
| [redacted] | n | | [redacted] | | | | |

FRANK R. UBHAUS, CA STATE BAR NO. 46085
MARCO M. CAMPAGNA, CA STATE BAR NO. 246633
BERLINER COHEN
TEN ALMADEN BOULEVARD
ELEVENTH FLOOR
SAN JOSE, CALIFORNIA 95113-2233
TELEPHONE: (408) 286-5800
FACSIMILE: (408) 998-5388
frank.ubhaus@berliner.com
marco.campagna@berliner.com

ATTORNEYS FOR PLAINTIFFS
THOMAS P. MASTERS, ET AL

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

UNLIMITED JURISDICTION

| | |
|---|---|
| THOMAS P. MASTERS, an individual, THOMAS P. MASTERS, trustee of the THOMAS P. MASTERS 1993 TRUST, and THOMAS P. MASTERS, beneficiary of STERLING TRUST COMPANY INDIVIDUAL RETIREMENT ACCOUNT #031442,<br><br>Plaintiffs,<br><br>v.<br><br>DANIEL J. SHAW, an individual, CASCADE INVESTMENTS, LLC, a California Limited Liability Company, RMRF ENTERPRISES, INC., a California corporation dba CUPERTINO CAPITAL, DANIEL J. SHAW as trustee of THE SHAW 1993 LIVING TRUST, and DOES 1-20, inclusive,<br><br>Defendants. | CASE NO. _____<br><br>STIPULATION FOR ENTRY OF JUDGMENT AND ORDER |

DANIEL J. SHAW, individually, and as Managing Agent for CASCADE INVESTMENTS, LLC and RMRF ENTERPRISES, INC., a California Corporation dba CUPERTINO CAPITAL, and as trustee of THE SHAW 1993 LIVING TRUST (collectively, "DEFENDANTS") stipulates that judgment may be entered against DEFENDANTS in the above matter in favor of Plaintiffs THOMAS P. MASTERS, THOMAS P. MASTERS, trustee of the THOMAS P. MASTERS 1993 TRUST, and THOMAS P. MASTERS, beneficiary of STERLING TRUST COMPANY INDIVIDUAL RETIREMENT ACCOUNT #031442 in the

-1-

\\MCAMPAGNA\759347.1
042208-16950001